IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JULIE M. GABREE,

        Plaintiff,                      No. CIV S-07-0713 DAD

     vs.

MICHAEL J. ASTRUE,                 <u>ORDER</u>
Commissioner of Social Security,

        Defendant.
_____/

        This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and/or remand, and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security (Commissioner) is reversed, and the matter is remanded with the direction to award benefits.

**PROCEDURAL BACKGROUND**

        Plaintiff Julie M. Gabree applied for Disability Insurance Benefits under Title II of the Social Security Act (Act) on June 3, 2004, alleging disability beginning on August 21, 2002 due to herniated disc, degenerative hip, and anxiety. (Transcript (Tr.) at 62-64.) The application was denied initially on September 22, 2004, and upon reconsideration on January 10, 2005. (Tr. at 26-27, 36.)

Pursuant to a timely request made by plaintiff's attorney, a hearing was held before an administrative law judge (ALJ) on November 10, 2005. (Tr. at 42, 291-358.) Plaintiff testified at the hearing, as did her husband and a vocational expert. In a decision dated September 25, 2006, the ALJ entered the following findings:

> 1. Claimant filed an application for a period of disability and disability insurance benefits on June 3, 2004, alleging disability from August 21, 2002.
>
> 2. Claimant met the disability insured status requirements of the Act on August 21, 2002, his [sic] alleged onset date, and continues to meet those requirements through September 30, 2007.
>
> 3. Claimant has not performed SGA [substantial gainful activity] since August 21, 2002.
>
> 4. The medical evidence establishes that claimant has the severe impairments of degenerative disc disease of the cervical and lumbar spines and anxiety disorder with depression.
>
> 5. Claimant's severe impairments do not meet or equal any listed impairment of Appendix 1, Subpart P of Social Security Administration Regulation No. 4.
>
> 6. Claimant has an RFC for a range of work at the sedentary exertional level with the ability to lift up to 10 pounds occasionally, stand/walk two to four hours per day, up to 30 minutes at a time, sit four to six hours per day sitting with the need to stretch every 45 minutes, occasionally climb, crouch, stoop, bend at the waist and crawl and frequently kneel with preclusion from working in high humidity or temperature extremes. In addition, non-exertionally, claimant has a mild limitation in the ability to maintain concentration, persistence and pace (up to 15% of the time) and a mild limitation in social functioning (up to 15% of the time).
>
> 7. Claimant's subjective complaints are not fully credible.
>
> 8. Claimant is presently a 46-year-old individual with a GED and vocationally relevant past work experience as a USPS mail carrier during the last 15 relevant years.
>
> 9. Considering the above RFC, claimant cannot perform past relevant work.
>
> 10. Considering the above RFC and vocational characteristics, the vocational expert identified other jobs that exist in significant numbers in this and other regions of the United States that plaintiff

can perform. Cited jobs include masker, shade assembler and agricultural sorter.

11. Pursuant to 20 C.F.R. § 404.1520(g), claimant is not and has not been under a "disability" as that term is defined in the Social Security Act, as amended, at any time through the date of this decision.

(Tr. at 22-23.)

On February 23, 2007, the Appeals Council denied plaintiff's request for administrative review of the ALJ's decision. (Tr. at 6-9, 12-14.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on April 13, 2007.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

improper legal standard was applied in weighing the evidence, <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized in the Ninth Circuit as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

<u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. <u>Yuckert</u>, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. <u>Id.</u>; <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff advances the following four arguments in support of her summary judgment motion: (1) the ALJ did not properly evaluate the testimony of Joseph Gabree, plaintiff's husband; (2) the ALJ did not properly evaluate the medical opinions of treating physician Varsha R. Sikka, M.D., and treating psychiatrist George D. Trahms, M.D.; (3) the ALJ

improperly equated plaintiff's daily activities with the ability to engage in substantial gainful activity; and (4) the ALJ did not properly evaluate plaintiff's testimony concerning her symptoms. Each of plaintiff's arguments is addressed below, although not in the order presented by plaintiff.

Plaintiff's arguments challenge the ALJ's step four determination of her residual functional capacity (RFC) and his use of that RFC at step five to find her capable of performing other jobs that exist in significant numbers in the national economy. A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). The assessment of a claimant's RFC must be "based on all the relevant evidence in [the claimant's] case record." Id. See also Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001). When a claimant requests an administrative hearing, it is the duty of the ALJ to determine the claimant's RFC from the record. 20 C.F.R. § 404.1546(c). In this case, the ALJ determined that plaintiff's severe impairments are (1) degenerative disc disease of the cervical and lumbar spines and (2) anxiety disorder with depression. (Tr. at 19.) The ALJ found "no restriction of activities of daily living, mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence or pace with no evidence of episodes of decompensation of extended duration in work or work-like environments." (Id.) The ALJ also found that

> claimant has an RFC for a range of work at the sedentary exertional level with the ability to lift up to 10 pounds occasionally, stand/walk two to four hours per day, up to 30 minutes at a time, sit four to six hours per day sitting with the need to stretch every 45 minutes, occasionally climb, crouch, stoop, bend at the waist and crawl and frequently kneel with preclusion from working in high humidity or temperature extremes. In addition, non-exertionally, claimant has a mild limitation in the ability to maintain concentration, persistence and pace (up to 15% of the time) and a mild limitation in social functioning (up to 15% of the time).

(Id.)

/////

/////

**I. Whether the ALJ Properly Evaluated the Opinions of Drs. Sikka and Trahms**

Varsha Rani Sikka, M.D., was plaintiff's treating doctor for pain management. George D. Trahms, M.D., was plaintiff's treating psychiatrist beginning in July 2004. The ALJ credited all of Dr. Sikka's March 1, 2005 Medical Assessment of Ability to Do Work Related Activities (Physical) except her opinion that plaintiff would have to be absent from work for three or more days per month because of her medical condition and treatment for that condition. (Tr. at 19.) The ALJ rejected Dr. Trahms' February 14 2005 Mental Assessment and Mental Residual Functional Capacity Assessment primarily on the ground that the doctor was acting as an advocate for plaintiff rather than as an objective doctor. (Tr. at 20.)

It is undisputed that the medical opinions of treating physicians are entitled to special weight. Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830. "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Id. (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).

"Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). In order to meet the Commissioner's burden of setting forth specific, legitimate reasons for giving less weight to the controverted opinion of a treating physician, the ALJ must set out a detailed and thorough summary of the facts and conflicting clinical evidence, state his or her interpretation of the evidence, and make findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). In developing the record and interpreting the evidence, the ALJ must explain why significant probative evidence has been rejected and must
/////

reach a decision supported by substantial evidence. Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003); Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Here, the body of the ALJ's decision is titled "Evaluation of the Evidence," but the decision does not contain a summary of the facts and clinical evidence. (Tr. at 19-22.) Rather, the ALJ begins by determining plaintiff's severe impairments, announces his findings with regard to plaintiff's limitations and RFC, and concludes with the bald assertion that "[t]his RFC is consistent with the medical evidence." (Tr. at 19.) The findings are followed by a discussion of the medical opinions of three treating physicians (Sikka, Trahms, Woolery), two examining physicians (Serrano and McCray), and two agency physicians, with the ALJ crediting the parts of the opinions that support his RFC findings and discrediting the parts that do not. (Tr. at 19-20.) By purporting to crediting parts of medical opinions, the ALJ obscures the relative weight he gives to the opinions of treating, examining, and non-treating/non-examining physicians. The ALJ's evaluation continues with a discussion of plaintiff's subjective complaints and testimony, as well as the testimony of plaintiff's husband, with the ALJ rejecting all testimony inconsistent with his own RFC determination. (Tr. at 20-21.) The ALJ completes the evaluation of evidence with a discussion of the vocational expert's testimony and a determination that plaintiff cannot perform her past relevant work but can perform other jobs in the national economy. (Tr. at 21-22.)

**A. Dr. Sikka's Opinion**

The ALJ "credited" Dr. Sikka's March 2005 opinion in determining plaintiff's exertional limitations but nonetheless rejected one part of Dr. Sikka's opinion.

> The only portion of Dr. Sikka's assessment that I do not accept is his [sic] opinion that claimant would miss work three or more times per month due to her severe impairments or treatment thereof. First, I find this opinion to be inconsistent with his [sic] treatment notes indicating only conservative treatment and pain management. In addition, it appears that Dr. Sikka did not fully

/////

| | |
|---|---|
| 1 | understand this question in that he [sic] clarified his [sic] response by indicating that claimant needed vocational rehabilitation |
| 2 | training. |

(Tr. at 19, citing Ex. 17F [tr. at 228-239].)

Dr. Sikka's opinion about absenteeism was stated in response to a form question asking the medical provider to estimate, on the average, how often her patient was likely to be absent from work as a result of medical impairments or treatment for those impairments. (Tr. at 223-26.) Dr. Sikka marked "Three days per month or more" as her response and indicated that the medical findings supporting this assessment were degenerative disk disease of the spine and the patient's need for vocational rehabilitation training. (Tr. at 226.) Because the treating physician's opinion on this point is not contradicted by another doctor, it may be rejected only for clear and convincing reasons.

The ALJ's first reason for rejecting Dr. Sikka's opinion on absenteeism is neither clear nor convincing. The ALJ does not explain why the decision to treat plaintiff's degenerative disc disease with conservative treatment and pain management is inconsistent with an opinion that plaintiff would probably be absent from work three or more times per month as a result of her medical impairments or the treatment for those impairments.

The ALJ's second reason for rejecting Dr. Sikka's opinion on absenteeism is even less convincing. The ALJ suggests that Dr. Sikka did not fully understand the question because she "clarified" her response "by indicating that claimant needed vocational rehabilitation training." The form required a statement of medical findings in support of the response to the question about absenteeism, and Dr. Sikka stated two medical findings as the basis for her estimate that plaintiff would probably be absent from work three or more times per month: plaintiff's degenerative disc disease and her need for vocational rehabilitation training. (Tr. at 226.) In response to the first question on the form, Dr. Sikka had already indicated, in the

/////

/////

8

context of her opinion about plaintiff's severely limited ability to lift and carry, that plaintiff "can't go back to her previous vocation, needs vocational rehab."[1] (Tr. at 223.)

The court finds that the ALJ did not properly evaluate Dr. Sikka's uncontradicted opinion that plaintiff was likely to be absent from work, on the average, three days or more per month, and failed to state a clear and convincing reason for rejecting the opinion.

**B. Dr. Trahms' Opinion**

The ALJ also stated that he "credited" the February 14, 2005 Mental Assessment and Mental Residual Functional Capacity Assessment by Dr. Trahms "to the extent that it is consistent with the . . . RFC" determined by the ALJ. (Tr. at 20.) A comparison of Dr. Trahms' assessment with the RFC determined by the ALJ reveals that the only consistency between the treating psychiatrist's assessment and the ALJ's RFC is the finding of no evidence of episodes of decompensation of extended duration. (Tr. at 19, 218.)

Thus, because the ALJ rejected Dr. Trahms' assessment "[t]o the extent that he opined more restrictive limitations," the ALJ in essence rejected Dr. Trahms' entire assessment as inconsistent with the medical record. (Tr. at 20.) The ALJ pointed to the October 2002 opinion of James Woolery, M.D., plaintiff's former treating psychiatrist, "that claimant 'has responded moderately well' to medications, albeit with some continuing severe symptomology, and that her past employment with the postal service (now ended) was a significant source of her stressors." (Tr. at 20, citing Ex. 4F/1 [tr. at 171].) The ALJ's characterization of Dr. Woolery's opinion is inaccurate. In fact, Dr. Woolery, who had treated plaintiff for ten years when she was a Kaiser Permanente patient, stated that plaintiff had responded moderately well to a combination of two medications "but continues to suffer significant symptoms." (Tr. at 171.) He also stated that, "[w]hile I do not think that her employment was the primary cause of her symptoms, . . . it

---

[1] The treatment notes cited by the ALJ plainly show that Dr. Sikka and other physicians treating plaintiff at the NorthBay Center for Pain Management regularly prepared progress notes for Worker's Compensation and found plaintiff's impairments permanent and stationary or stable but included vocational rehabilitation training in plaintiff's treatment plan. (Tr. at 228-29, 231.)

9

seems like her work with the Postal Service significantly increased her stress level and aggravated her symptoms." (Id.) Nothing in Dr. Woolery's 2002 opinion contradicts the limitations found by Dr. Trahms in 2005.

The ALJ also found Dr. Trahms' functional limitations "inconsistent with his own treatment notes and relatively routine treatment." (Tr. at 20.) This generality is not supported by any discussion or citation to specific treatment notes or treatment choices. As such, the assertion fails to constitute a clear and convincing reason for rejecting the treating psychiatrist's opinion as to plaintiff's functional limitations.

The ALJ next found that Dr. Trahms' finding of moderate limitation in activities of daily living was inconsistent with statements plaintiff made in July 2004 to examining psychologist Wendy McCray "indicating a greater capacity for performing such activities." (Tr. at 20.) The ALJ's conclusory statement is not supported by a discussion of the statements made to Ms. McCray that indicate a greater capacity for activities of daily living, nor even by a citation to any page of the McCray report. In a section titled "Current Level of Functioning," Ms. McCray indicated that plaintiff was able to complete self-care tasks except for putting on shoes, did her own laundry, fixed meals, and completed light household chores; her son went grocery shopping with her to do the loading and unloading of the groceries; she was able to drive locally and got out of her home at least four times a week; she experienced panic attacks lasting up to one hour once a week; she was attending weekly therapy; she was not social and had no interests or hobbies. (Tr. at 174-75.) These activities are not inconsistent with Dr. Trahms' finding of moderate limitation in activities of daily living, which is defined on the form as describing a limitation level "[w]hen the evidence supports the conclusion that the individual's capacity to perform the activity is impaired." (Tr. at 218.) In the absence of probative evidence contradicting Dr. Trahms' finding of moderate limitation in activities of daily living, the ALJ's citation to Ms. McCray's opinion fails to establish a clear and convincing reason for rejecting the treating psychiatrist's opinion as to plaintiff's functional limitations.

The ALJ also found Dr. Trahms' opinion "inordinately based upon claimant's subjective complaints that I find not fully credible." (Tr. at 20.) For reasons set forth infra, the court finds that the ALJ erred in his evaluation of plaintiff's subjective symptom testimony. The ALJ's erroneous finding concerning plaintiff's credibility does not provide a clear and convincing reason for rejecting the treating psychiatrist's opinion in any regard.

Finally, the ALJ asserted that, "to the extent that the medical record does not fully support his opinion, . . . Dr. Trahms is acting more as an advocate for social security benefits rather than as an objective examining doctor." (Tr. at 20.) The purpose for which a report is obtained does not provide a legitimate basis for rejecting it. See Lester, 81 F.3d at 832 ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits. While the Secretary may introduce evidence of actual improprieties, no such evidence exists here."); Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996); Reddick v. Chater, 157 F.3d 715, 726-27 (9th Cir. 1998). Here, the ALJ did not introduce any evidence of impropriety with regard to Dr. Trahms' opinion, and the mere allegation that the treating psychiatrist was acting as an advocate is not a clear and convincing reason for rejecting the treating psychiatrist's opinion regarding limitations and mental residual functional capacity.

**C. Conclusion**

Plaintiff is entitled to summary judgment on her claim that the ALJ did not properly evaluate the medical opinions of her treating physician Dr. Sikka and her treating psychiatrist Dr. Trahms.

**II. Whether the ALJ Properly Evaluated Plaintiff's Subjective Symptom Testimony**

Plaintiff asserts that the ALJ improperly rejected her subjective symptom testimony. It is well established that once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of his or her symptoms merely because the symptoms are unsupported by objective medical evidence. Reddick, 157 F.3d at 722; Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.

1997). Indeed, "'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" Light, 119 F.3d at 792 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)).

In evaluating a claimant's subjective testimony regarding pain and the severity of his symptoms, the ALJ may consider the presence or absence of supporting objective medical evidence, along with other factors. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc); see also Smolen, 80 F.3d at 1285. The ALJ cannot substitute his or her own observations for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

Questions of credibility and the resolution of conflicts in the testimony are usually deemed functions solely of the Commissioner. Morgan, 169 F.3d at 599. The determination of credibility is a function of the ALJ acting on behalf of the Commissioner. Saelee, 94 F.3d at 522. Accordingly, an ALJ's assessment of credibility should, in general, be given great weight. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). Ordinary techniques of credibility evaluation may be employed, and the adjudicator may take into account prior inconsistent statements or a lack of candor by the witness. Fair, 885 F.2d at 604 n.5. Absent affirmative evidence of malingering, however, the reasons for rejecting the claimant's testimony must be clear and convincing. Morgan, 169 F.3d at 599.

In this case, the ALJ found plaintiff's testimony "not fully credible" to the extent that it was inconsistent with medical evidence supporting the ALJ's finding that plaintiff had the capacity to perform a range of work at the sedentary exertional level. (Tr. at 20.) The ALJ found plaintiff's complaints "somewhat exaggerated" and determined that plaintiff's activities of daily living showed that she had a greater capacity for work than she was willing to acknowledge. (Tr. at 21.) The ALJ did not specify what testimony was not credible and explain why.

The ALJ failed to give clear and specific reasons for finding that plaintiff's statements concerning the limiting effects of her symptoms are exaggerated and not fully
/////

credible. The court finds that plaintiff is entitled to summary judgment on her claim that the ALJ improperly evaluated her testimony concerning her symptoms.

**III. Whether the ALJ Properly Evaluated the Testimony of Plaintiff's Husband**

Plaintiff argues that the ALJ improperly concluded that the 2004 third-party report completed by Joseph Gabree, plaintiff's husband, contained "considerable activities of daily living" and that Mr. Gabree's hearing testimony merely reiterated plaintiff's subjective complaints. (Tr. at 21.)

The testimony of lay witnesses, including family members, about their own observations regarding the claimant's impairments must be considered and discussed by the ALJ. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); Smolen, 80 F.3d at 1288; Sprague, 812 F.2d at 1232. Clearly, family members who see the claimant on a daily basis are competent to testify as to their observations. Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give reasons that are germane to that particular witness. Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.

As with his treatment of the doctors' opinions, the ALJ "credited" Mr. Gabree's July 2004 third-party statement "to the extent that he indicated considerable activities of daily living" but rejected it in all other respects. (Tr. at 21.) The ALJ also rejected Mr. Gabree's hearing testimony. (Id.) The court agrees with plaintiff that the ALJ failed to apply the proper legal standard to Mr. Gabree's report and testimony. Pursuant to the Commissioner's regulations, the ALJ must, in certain cases, consider observations made by nonmedical sources about how the claimant's impairments affect her ability to function. 20 C.F.R. § 404.1513(e)(2). It is particularly important for the ALJ to consider lay witness testimony from third parties where a claimant alleges pain or other symptoms not supported by medical evidence in the file and the third parties have knowledge of the claimant's daily activities. Social Security Ruling (SSR) 88-13. This is such a case.

In 2004, Mr. Gabree had been married to plaintiff for 25 years. (Tr. at 97.) In his written report, he observed the following: he spent all of his non-working time with his wife; she spent her days looking after their then-fourteen year old son and their pets; she was no longer able to walk the dogs, do all the shopping, do housework or yardwork, go for long drives, go camping, or socialize; sometimes she cannot change clothes; sometimes she takes showers because it is too painful to bathe; she is able to do only light housekeeping and no longer prepares home-made foods; when she does chores, she is seldom able to complete them in one day; she used to enjoy sewing and crafting but seldom participates in those activities any more; she is often moody and tired due to lack of restful sleep. (Tr. at 97-105.)

In failing to consider and evaluate all of the evidence in Mr. Gabree's report on the ground that it was inconsistent with the ALJ's RFC findings and in rejecting Mr. Gabree's hearing testimony as duplicative of plaintiff's subjective testimony found to be not credible by the ALJ, the ALJ failed to give reasons germane to the particular witness. See Dodrill, 12 F.3d at 919. The court finds that the ALJ did not properly evaluate Mr. Gabree's written report and hearing testimony. Plaintiff is entitled to summary judgment on this claim.

## IV. Whether the ALJ Improperly Equated Plaintiff's Daily Activities With Ability to Work

Plaintiff argues that the ALJ improperly equated her daily activities with the ability to engage in substantial gainful activity.

Plaintiff's and her husband's written reports and hearing testimony reflect that plaintiff's activities of daily living are limited. As set forth supra, plaintiff's days are spent caring for her son and the family pets, although she cannot walk the dogs. She makes simple meals, does only light housework and no yardwork, and is generally unable to finish a chore in one day. She has panic attacks approximately once a week. The record contains substantial evidence that plaintiff's activities are not consistent with the level of activity required to work eight hours a day five days a week. Moreover, social security claimants need not be "utterly

incapacitated to be eligible for benefits." <u>Fair</u>, 885 F.2d at 603. <u>See also</u> <u>Webb v. Barnhart</u>, 433 F.3d 683, 688 (9th Cir. 2005); <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). <u>See also</u> 20 C.F.R. § 404.1572 (providing that, in general, the Commissioner does not consider "activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs" to be substantial gainful activities). The court finds that plaintiff is entitled to summary judgment on this claim.

## CONCLUSION

The ALJ did not properly evaluate the medical opinions of plaintiff's treating doctors, did not properly evaluate plaintiff's subjective symptom testimony, did not properly evaluate the report and hearing testimony of plaintiff's husband, and improperly equated plaintiff's daily activities with the ability to engage in substantial gainful activity. As a result of these errors, the ALJ's RFC determination is not supported by substantial evidence in the record.

Plaintiff contends that the Commissioner's final decision should be reversed and benefits should be awarded because the record has been fully developed and the treating doctors' opinions establish that plaintiff is disabled. Plaintiff cites the vocational expert's testimony that plaintiff would be unemployable if she were to miss work three days or more per month on an ongoing basis, as Dr. Sikka indicated, or if her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms was markedly impaired, as Dr. Trahms found. (Tr. at 220, 226, 351-52.)

The decision whether to remand a case for additional evidence or to simply award benefits is within the discretion of the court. <u>Ghokassian v. Shalala</u>, 41 F.3d 1300, 1304 (9th Cir. 1994); <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 (9th Cir. 1990). The Ninth Circuit has stated that, "[g]enerally, we direct the award of benefits in cases where no useful purpose would be served

by further administrative proceedings, or where the record has been thoroughly developed." Ghokassian, 41 F.3d at 1304 (citing Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988)). This rule recognizes the importance of expediting disability claims. Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001); Ghokassian, 41 F.3d at 1304; Varney, 859 F.2d at 1401.

Here, plaintiff's disability application was filed on June 3, 2004, almost five years ago. The record has been adequately developed and establishes that plaintiff should have been found disabled beginning on August 21, 2002. No useful purpose would be served by further administrative proceedings. In light of the vocational expert's testimony, this matter will be remanded with the direction to award benefits. See Moore v. Comm'r of Soc. Sec. Admin, 278 F.3d 920, 925 (9th Cir. 2002) (remanding for payment of benefits where the ALJ improperly rejected the testimony of the plaintiff's examining physicians); Ghokassian, 41 F.3d at 1304 (awarding benefits where the ALJ "improperly discounted the opinion of the treating physician").

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's August 28, 2007 motion for summary judgment and/or remand (Doc. No. 13) is granted;

2. Defendant's September 27, 2007 cross-motion for summary judgment (Doc. No. 15) is denied;

3. The decision of the Commissioner of Social Security is reversed; and

4. This case is remanded with the direction to award benefits for disability from August 21, 2002.

DATED: April 27, 2009.

*/s/ Dale A. Drozd*
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/gabree0713.order